## WALDO v. AMERICAN SODA FOUNTAIN CO.

(Circuit Court, D. New Jersey. March 16, 1899.)

PATENTS—LICENSE TO SELL AND MANUFACTURE—CONSTRUCTION.

The complainant, being the owner of letters patent of the United States No. 264,586, for an improvement in soda-water apparatus, executed a license to a firm, conferring upon it, among other things, the exclusive right to make, use and sell the patented invention as applied to new soda-water apparatus "of their own manufacture only," and providing that the license "shall be binding on the parties hereto, their heirs, successors, administrators or assigns, and shall be valid until the 19th day of September, 1899, or unless sooner terminated by the written consent of both parties hereto." *Held*, on consideration of all the provisions in the license, that in imposing the restriction "of their own manufacture only" the complainant intended that the right to make, use and sell the

patented invention as applied to new apparatus should only be confined to such person or persons as should hold the license from time to time during its term and manufacture such apparatus, and not exclusively to the firm, and that therefore the license was assignable.

(Syllabus by the Court.)

In Equity.

Denis A. Spellissy, for complainant.

Clarkson A. Collins, for defendant.

BRADFORD, District Judge. The bill in this case charges infringement of letters patent of the United States No. 264,586, for an improvement in soda-water apparatus issued to the complainant September 19, 1882, and prays for an injunction and an account. The patented invention is an acid-feeder used in connection with such apparatus. The defendant by way of plea justifies the acts complained of as infringements by virtue of a license executed by the complainant to the firm of John Matthews and subsequently, as alleged, assigned to the defendant. On or about March 16, 1886, the complainant and the firm of John Matthews, a co-partnership then composed of John H. Matthews and others, entered into an agreement under seal, as follows:

"This agreement, entered into this thirteenth day of March, 1886, between the firm of John Matthews, of New York, in the County and State of New York, party of the first part, and Francis S. Waldo, of the same place, party of the second part, witnesseth:

"Whereas, the said party of the second part is the owner of letters patent of the United States No. 264,586, issued Sept. 19th, 1882, for an acid-feeder for use on soda-water apparatus,

"And whereas, the said party of the first part is desirous of acquiring the exclusive right of manufacturing, using and selling said patented invention as applied to new machinery, and also the right to apply the same to old machinery,

"And whereas, the said party of the second part has granted unto one Martin V. B. Watson, of San Francisco, California, the exclusive right for the term of five years of manufacturing, using and selling said invention in the states of Nevada, California, Oregon and the Territories of Idaho, Washington, Arizona, Montana and Utah, which license will expire September 12th, 1889,

"Now, in consideration of the sum of one thousand dollars ($1,000) in hand paid to said party of the second part by said party of the first part, the receipt of which is hereby acknowledged, and of the covenants and conditions hereinafter contained, to be well and truly kept by said party of the first part, the said party of the second part has granted and by these presents does grant unto said party of the first part the exclusive right, liberty and license for the whole term of said letters patent, of making, using and selling said patented invention as applied to new machinery of their own manufacture only for that part of the United States not covered by the license to M. V. B. Watson hereinabove set forth, and at the expiration of said license to Watson the exclusive right of making, using and selling the said patented invention throughout all the United States and territories thereof as applied to new machinery.

"It is agreed, that said party of the first part shall have the further right, which shall not be exclusive, of manufacturing and selling said patented invention to be applied to old machinery until the number sold, including those sold to be applied to new machinery, as hereinafter expressed, shall reach one thousand (1,000) and that when said number shall have been sold, the right of the party of the first part to sell said patented invention to be applied to old machinery shall cease and determine.

"It is agreed, that in the construction of this agreement the term 'new machinery' shall refer to machinery which shall have been used for less than six months, or not at all, before the improvement is applied thereto, and the term 'old machinery' to machinery which shall have been in use for more than six months before the improvement is applied thereto.

"It is agreed, that every article containing the patented invention, and sold by either of the parties hereto, shall be marked with the word 'patented' and with the number or date of the patents, and shall be accompanied by a user's license properly filled out and signed by the party selling, the form of said license being annexed hereto and marked 'Schedule A.'

"The parties hereto hereby agree not to sell below the prices in 'Schedule B' annexed, but said prices may be changed at any time by mutual agreement; said party of the second part agrees not to sell said patented invention for use on old machines to any manufacturer of soda-water apparatus, and to advertise the fact that the said party of the first part has the exclusive right of selling said patented invention for application to new machinery.

"Said party of the first part agrees to advertise and endorse said invention in their catalogue and advertisements and through their salesmen, and not to sell said invention directly or indirectly to other manufacturers of soda-water apparatus.

"Said party of the second part agrees to pay to said party of the first part a commission of twenty (20) per cent. on the selling price of the patented acid-feeder on all orders for the same turned over to him by said party of the first part, provided he accepts the order, said payments to be made at the time said party of the second part is paid for said acid-feeder.

"It is agreed that full and true accounts shall be kept by each party hereto of every license issued by said party, such account to contain an accurate description of the machine to which license is applied, name and address of the purchaser and date and terms of sale. And such account is to be open to the inspection of the other party to this agreement at any reasonable time.

"The said party of the first part agrees to render to said party of the second part annually on the first day of August, or within twenty days thereafter, a sworn statement of all users' licenses granted by them during the preceding year.

"In further consideration of said sum of one thousand dollars the said party of the second part covenants and agrees that he has a full and unincumbered title to the patent hereby licensed, with the exception of the license to Watson hereinabove set forth.

"This agreement shall be binding on the parties hereto, their heirs, successors, administrators or assigns, and shall be valid until the 19th day of September, 1899, or unless sooner terminated by the written consent of both parties hereto.

"In testimony whereof, the said parties have hereunto set their hands and seals the day and year first above written.

Firm of John Matthews,   [Seal.]<br>
J. Matthews.<br>
F. S. Waldo.            [Seal.]

"Sealed and delivered in the presence of Joseph Connor.

"Interlining page 2, between lines 4 and 5, were there at the time of signing above.                                                    J. C."

"Schedule A.

"License No.

"In consideration of $        paid or to be paid we hereby license Mr. of        to use the invention known as the Waldo acid-feeder, covered by letters patent No. 264,586, issued Sept. 19th, 1882, on his one generator, of which the following is a full and accurate description.

"It is distinctly understood that this license applies to above-described generator only, and the use of the invention without proper license on any other generator will subject the user to a suit for infringement of above letters patent.

"[Signed]                              F. S. Waldo, Inventor.<br>
Firm of John Matthews, Licensee."

"Schedule B.

"Schedule of Prices.

"Price of feeder, including license to use to be until otherwise agreed, not less than $50.                                   Firm of John Matthews,
                                                                     J. M.
                                              F. S. Waldo."

Afterwards, on or about June 25, 1891, the surviving members of the firm of John Matthews and the personal representatives of such deceased persons as had been entitled to any interest or share in the property and assets thereof executed an assignment purporting to transfer absolutely to the defendant, among other things, the above license, subject to a certain proviso not material to be considered here. The defendant claims that the license from the complainant to the firm was assignable and was validly assigned to the defendant, and that all its acts in the manufacture, use and sale of the patented acid-feeder were within the scope of the license. It further claims that, if the license should be held not assignable, the defendant was nevertheless entitled to the benefit of it, not as assignee, but as successor to the business of the firm. The complainant, on the contrary, contends that the license was not assignable and that the defendant was not such a successor to the business of the firm as to entitle it to its protection. The license is inartificially drawn and an ascertainment of its scope or assignability or non-assignability involves careful examination and consideration of it as a whole. The draft when first submitted to the complainant for execution did not contain in the paragraph next following the recitals the words "of their own manufacture only." The evidence shows that he refused to sign the contract unless those words should be incorporated therein, for the reason that, without them, he thought "it would be a general license; it was not intended to be a general license." There was consequently an interlineation of those words and thereupon the contract was executed. The insertion, under the circumstances, of the words "of their own manufacture only" materially affected the scope of the license as embodied in the draft as first submitted. In so far as they were in conflict or inconsistent with any of the provisions in the instrument, they controlled, modified or qualified such provisions. Before the interlineation, the above-mentioned paragraph purported in effect to grant to the firm the exclusive right until September 12, 1889, to make, use and sell the Waldo feeder as applied to new machinery in all parts of the United States except Nevada, California, Oregon, Idaho, Washington, Arizona, Montana and Utah, and after the last-named day and for the balance of the whole term of the letters patent the exclusive right to make, use and sell such feeder as applied to new machinery throughout the United States. Had the license been executed without the interlineation, the complainant would have wholly divested himself for the balance of the term of the letters patent of the right to make, use or sell his patented feeder as applied to new machinery which, under the contract, was soda water apparatus used for less than six months, or not at all, before the application thereto of such feeder. The insertion of the words "of their own manufacture only" materially narrowed the scope

of the rights which would have been conferred on the firm by the execution of the license in the terms of the original draft. The complainant by the license as executed granted to the firm, among other things, "the exclusive right, liberty and license for the whole term of said letters patent, of making, using and selling said patented invention as applied to new machinery of their own manufacture only for that part of the United States not covered by the license to M. V. B. Watson hereinabove set forth, and at the expiration of said license to Watson the exclusive right of making, using and selling the said patented invention throughout all the United States and territories thereof as applied to new machinery." There can be no question that until the expiration of Watson's license on September 12, 1889, the right conferred on the firm was restricted to the making, using and selling of the patented feeder solely in connection with new soda-water apparatus manufactured by the firm and until then the complainant retained the exclusive right to make, use and sell such feeder, except within the territorial limits mentioned in Watson's license, as applied to new apparatus other than that manufactured by the firm. I am further satisfied that after September 12, 1889, while the firm had the exclusive right for the balance of the term of the letters patent to make, use and sell throughout the United States the patented feeder in connection with new apparatus manufactured by the firm, the complainant retained the exclusive right for the balance of the term to make, use and sell throughout the United States such feeder as applied to new apparatus other than that manufactured by the firm. There is some inconsistency in the terms of the above provision. The latter portion of it purports to grant to the firm the exclusive right, at the expiration of Watson's license, to make, use, and sell throughout the United States the patented feeder as applied to new apparatus, without any restriction of that right to acid-feeders as applied to apparatus manufactured by the firm. This portion of the provision standing alone would negative the existence of any right on the part of the complainant after September 12, 1889, to make, use or sell the patented feeder in connection with new apparatus in any part of the United States. But it must be read in the light of what precedes it. The preceding part of the clause grants to the firm the exclusive right "for the whole term of said letters patent of making, using and selling said patented invention as applied to new machinery of their own manufacture only for that part of the United States not covered by the license to M. V. B. Watson." Here the exclusive right is expressly restricted for the term of the patent to making, using and selling in the United States, save in the excepted territory, the Waldo feeder in connection with new apparatus manufactured by the firm. It cannot be assumed that the complainant intended in and by the same sentence in which he expressly limited the exclusive right for the balance of the term to feeders as applied to new apparatus manufactured by the firm to remove that restriction during the term and permit the firm to make, use and sell the feeder to be used in connection with new apparatus by whomsoever manufactured. Nor can it be assumed that he intended that after September 12, 1889, the exclusive right of the firm

under the license should be more extensive in Nevada, California, Oregon, Idaho, Washington, Arizona, Montana and Utah than elsewhere in the United States. The complainant, having given an exclusive license to Watson for the above named states and territories for a limited period, granted to the firm an exclusive right in all other portions of the United States for the term of the patent, restricted to the application of the feeder to new apparatus of their own manufacture. Had it not been for that outstanding license it is reasonable to assume that the same exclusive but restricted right would simply and without circumlocution have been granted to the firm throughout the United States. It was evidently the intention of the complainant that the firm should on the expiration of Watson's license have for the residue of the term of the patent the same exclusive but restricted right in the territory theretofore occupied by Watson as well as in other portions of the United States. It is true that in a subsequent clause of the license the complainant agreed "to advertise the fact that the said party of the first part has the exclusive right of selling said patented invention for application to new machinery." This provision, taken literally, is in direct conflict with the paragraph above considered, where the interlineation was made as the condition on which the license was executed. The same effect must therefore be given to it as if it contained at the end thereof the words "of their own manufacture only." The conclusion I have reached on this branch of the case is that after September 12, 1889, the firm had under the license the exclusive right throughout the United States to make, use and sell the Waldo feeder as applied to new apparatus of their own manufacture, and the complainant retained the exclusive right throughout the United States, subject to certain sitpulations in the license unnecessary to be considered here, to make, use and sell such feeder as applied to new apparatus not manufactured by the firm. The license further provided that the firm "shall have the further right, which shall not be exclusive, of manufacturing and selling said patented invention to be applied to old machinery, until the number sold, including those sold to be applied to new machinery, as hereinabove expressed, shall reach one thousand (1,000), and that when said number shall have been sold, the right of the party of the first part to sell said patented invention to be applied to old machinery shall cease and determine." No charge of infringement can be sustained with respect to this provision. The evidence does not show or tend to show that it has been violated.

I now come to the question whether the license was assignable to the defendant. As an express contract it, like other express contracts, must be construed according to the intention of the parties as disclosed by the language therein employed. It is well settled that "a mere license to a party, without having his assigns or equivalent words to them, showing that it was meant to be assignable, is only the grant of a personal power to the licensees, and is not transferable by him to another." Nail Factory v. Corning, 14 How. 193. It is strongly urged on the part of the complainant that the license was strictly personal and therefore not assignable. There is doubtless some color for this contention. The right of the firm

to make, use and sell the patented feeder in connection with new apparatus was confined to apparatus "of their own manufacture only." The printed form of a user's license set forth in Schedule A contains the names of "F. S. Waldo, Inventor" and "Firm of John Matthews, Licensee." So the stipulation as to the price of a Waldo feeder, including the right to use the same, set forth in Schedule B. bears the names of "Firm of John Matthews" and "F. S. Waldo." The license further provided that "it shall be valid" for the term of the patent "unless sooner terminated by the written consent of both parties hereto." There are also other stipulations in the license which, considered alone, seem to involve personal confidence as between the parties. But can this contention be sustained? The concluding paragraph of the agreement is as follows:

"This agreement shall be binding on the parties hereto, their heirs, successors, administrators or assigns, and shall be valid until the 19th day of September, 1899, or unless sooner terminated by the written consent of both parties hereto."

It is asserted on the part of the complainant that this clause did not render the license assignable, but only provided for its duration and operated to make "heirs, successors, administrators or assigns," responsible for previous violations of its stipulations while subsisting between the complainant and the firm. But such an interpretation is inadmissible. Heirs and administrators would, with respect to their decedents' estates, have been liable in such case without any express declaration on the subject. The use of the word "assigns" in this connection would, so far as it relates to assigns of the firm, be unintelligible unless predicated on the right of the firm to assign the license. The word "successors" may fairly be applied to the firm as varying in its constituent members from time to time. Further, the license was by its express terms to be valid until the expiration of the term of the patent unless sooner terminated, not by death or by assignment, but by the written consent of both parties. The provision as to the continuance of the license in juxtaposition with the declaration that it should bind "the parties hereto, their heirs, successors, administrators, or assigns," plainly indicates when taken alone an intention by both parties that it should at any time during the term of the patent be assignable unless sooner terminated by consent. I have not discovered on careful examination of the various provisions of the license anything sufficient to negative this apparent intention. While it is true that the words "of their own manufacture only" are used, and the words "Firm of John Matthews, Licensee" are appended to the form prescribed for the user's license, and the words "Firm of John Matthews" appear in the stipulation as to the price of the patented feeder, the main license, if assignable, would mutatis mutandis be equally operative as between the complainant and the assignee. In such case the above restriction would relate to apparatus of the manufacture of the assignee only, and the assignee's name would be substituted for that of the firm of John Matthews in the user's license and stipulation as to price. So, too, the written consent required for the termination of the license within the term of the patent would

be that of the complainant or his assigns and the assignee. In imposing the restriction "of their own manufacture only" the complainant must be held to have intended that the right to make, use and sell the patented feeder as applied to new apparatus should only be confined to such person or persons as should hold the license from time to time during its term and manufacture such apparatus, and not exclusively to the firm of John Matthews. This construction of the license does not involve such hardship to the complainant as to render it unreasonable. He granted the exclusive right to the firm to make, use and sell his acid-feeder as applied to new machinery of its own manufacture. He retained such exclusive right as to new apparatus not manufactured by the firm. The license was for the balance of the whole term of the patent, and the firm had paid to the complainant a gross sum of money for the right secured from him. There was no stipulation or restriction as to the number of persons who should be employed by the firm in the manufacture and sale of new apparatus to which the exclusive right of applying the patented invention related, or as to the amount of capital which should be employed in carrying on its business. The firm had the right to invest unlimited capital in its business, and to establish branches in all parts of the United States. Under these circumstances, and in view of the express provision that the license should bind assigns, the license, in my opinion, clearly was assignable and was validly assigned to the defendant June 25, 1891. It does not appear from the evidence that the defendant at any time made, used or sold the patented invention except as applied to and forming part of new soda-water apparatus manufactured by it, nor that it made, used or sold the same at any time prior to the execution of the above assignment. The conclusion reached renders unnecessary any discussion of the question whether, if the license had not been assignable, the defendant was such a successor of the firm or succeeded to the business of the firm in such manner as to entitle it to the benefit and protection of the license.

The bill must be dismissed with costs.